UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHIRLEY S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01270-TAB-JPH |
| | ) | |
| KILOLO KIJAKAZI[1], Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S REQUEST FOR JUDICIAL REVIEW**

**I.    Introduction**

Plaintiff raises several issues in this appeal of the Commissioner's decision denying her claim for Social Security disability benefits. Plaintiff persuasively argues that the Administrative Law Judge's evaluation of Listing 1.04 was jumbled and fatally marred by the failure to consult a medical expert to consider important medical evidence that was never presented to the agency medical consultants. The ALJ also failed to provide a sufficient explanation as to why he favored the assessment of the non-examining state agency consultative examiner over the opinion of the psychological consultative examiner. The Commissioner's response brief glosses over, and in some instances ignores, several of the specific shortcomings Plaintiff raises. As a result, as more thoroughly explained below, the ALJ's decision is not supported by substantial evidence and remand is appropriate.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

## II.     Background

Plaintiff filed an application for disability benefits on August 4, 2016, alleging an onset date of August 18, 2014. Plaintiff's claim was denied initially and upon reconsideration. She then requested a hearing, and on January 28, 2019, the ALJ issued an unfavorable decision. [Filing No. 15-2, at ECF p. 17.] The Appeals Council denied review on February 27, 2020, and this appeal followed.

At the time of her filing date, Plaintiff was 54 years old, and had previously worked as a pharmacy technician. Plaintiff went to the Eskenazi Emergency Department on June 26, 2014, for chronic back pain, and returned to the ER on November 20, 2014, with a headache, at which time she was assessed with depression. [Filing No. 15-4, at ECF p. 10-12.] She returned on April 3, 2015, for lumbar pain and depression and again on October 5, 2015, for acute and chronic back and knee pain. [Filing No. 15-4, at ECF p. 8-10, 43.] Thereafter, on October 13, 2015, Plaintiff presented to Dr. Kevin Tolliver at a Transitional Care Clinic for follow-up. Dr. Tolliver referred her to physical therapy for her back pain and to Midtown Community Mental Health for her mixed anxiety and depressive disorder, and he started her on Cymbalta and ibuprofen. [Filing No. 15-4 at ECF p. 38.] Plaintiff returned to Dr. Tolliver on February 3, 2016, for further follow-up, was "very sad and tearful," and said she felt "too depressed to work" and could not sleep. Dr. Tolliver again referred to her to Midtown and added gabapentin for her back pain and melatonin for her insomnia. [Filing No. 15-4, at ECF p. 30.] Plaintiff presented to Midtown for a psychiatric evaluation on April 21, 2016. Psychiatrist Kimberly Mayrose observed that she was occasionally childlike and quite adamant in her opinions, with a mildly

2

constricted affect and whispered speech. Dr. Mayrose diagnosed recurrent and moderate major depressive disorder and an unspecified personality disorder. [Fling No. 15-4 at ECF p. 99, 100.][2]

Dr. Outcalt conducted a psychological consultative examination on November 8, 2016. Plaintiff reported a history of trauma, stated her mood was "really bad, really depressed," described auditory hallucinations, and was tense and apparently fearful throughout the interview. [Filing No. 15-4, at ECF p. 134,135.] Dr. Outcalt concluded that while Plaintiff could learn, remember, and comprehend simple instructions, "her ability to carry out such instructions was negatively impacted by disrupted concentration and lethargy," and thought she may struggle with faster-paced work changes. [Filing No. 15-4, at ECF p. 140.] Dr. Outcalt diagnosed Plaintiff with PTSD and severe persistent depressive disorder with intermittent major depressive episodes.

Dr. Shuyan Wang completed a physical consultative examination on November 8, 2016. Plaintiff had tenderness of her lumbar spine, complained of back pain with left hip motion, was tearful, had limited range of motion with her left foot, and could only stand on her left leg alone for two seconds. [Filing No. 15-4, at ECF p. 143.45.] Lumbar spine x-rays on December 10, 2016, showed mild degenerative disc disease at L2-3, L3-4, and L4-5, as well as minimal lumbar scoliosis. [Filing No. 15-4, at ECF p. 148.] In January 2017, Plaintiff was seen by internist Dr. Anish Pattisapu, for multiple complaints, including right arm numbness and finger tingling, weakness on the right side with a history of falls, headaches, and chronic back pain with occasional urinary incontinence. [Filing No. 4, at ECF p. 186.] Examination revealed decreased grip strength on the right, and decreased hip strength on the left, and intact sensation but with a

---

[2] Plaintiff's treatment at Midtown was closed out on August 4, 2016, due to lack of contact. [Filing No. 15-4, at ECF p. 104.] The record contains numerous other references to Plaintiff failing to follow-up with her treatment. However, the Commissioner does not raise these failures in any meaningful way, so the Court does not dwell on them.

3

report of mild decrease on the arm. Thereafter, on April 22, 2017, Plaintiff went to the emergency room for back and pelvic pain, and returned on June 7, 2017, for lower back pain radiating to her lower right leg and urinary incontinence. An MRI of the lumbar spine on that date showed changes of spondylosis, mild central stenosis degenerative disc disease, and asymmetric bulging into the left foramen at L2-3 making some contact with the exiting left L2 nerve root. [Filing No. 15-5, at ECF p. 37.]

Plaintiff started a new round of physical therapy for her lower back pain on June 12, 2017. On examination, she had symptoms that included significant loss of range of motion in her trunk and right hip, reduced strength in her lower extremities, tenderness to palpation along the lumbar spine and bilateral paraspinal muscles, and positive straight leg raising when supine on both sides. [Filing No. 15-5, at ECF p. 26-27.] An evaluation on the same date by rehabilitation specialist Dr. Anthony Mimms made similar findings. [Filing No. 15-5, at ECF p. 30.] In July 2017, Dr. Smartt, Jr., a state agency physician, and Dr. Neville, a state agency psychologist, reviewed Plaintiff's updated medical records and assessed the nature and severity of Plaintiff's physical impairments, including her residual functional capacity. [Filing No. 15-2, at ECF p. 232-47.] Dr. Smartt and Dr. Neville found none of Plaintiff's impairments met or equaled a listed impairment.

In his unfavorable decision, the ALJ found that Plaintiff was last insured on March 31, 2015, that she met the non-disability requirements for disabled widow's benefits, and that she had not engaged in substantial gainful activity since her alleged onset date of January 18, 2014. The ALJ listed severe impairments of degenerative disc disease, depression, anxiety, and a personality disorder, but indicated that none of her impairments met or medically equaled the severity of any of listed impairments. The ALJ determined Plaintiff had a residual functional

capacity of medium work, further limited to "occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; frequently balancing; occasionally stooping, kneeling, crouching, or crawling; semi-skilled tasks; and frequently interacting with coworkers, supervisors, and the public." [Filing No. 15-2, at ECF p. 26.] The ALJ concluded that Plaintiff could perform past relevant work as a pharmacy technician.

### III. Discussion

In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *Barnett v. Barnhart*, 381 F.3d 664, 668, (7th Cir. 2004). The Seventh Circuit has held that "the ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).

Plaintiff's challenge to the ALJ's decision focuses on the following findings:

> I considered the claimant's back pain using the criteria of Listing 1.04 . . . , which requires medical evidence of a disorder of the spine . . . , resulting in compromise of a nerve root . . . or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively. In this case, there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively. The claimant has frequently complained of pain, but imaging of her spine has only revealed mild degenerative disc disease. She has had tenderness and limitation of motion, but she has not had significant and ongoing neurological deficits. Intermittently, she was found to have some decreased strength or loss of sensation, but she never lost the ability to ambulate effectively. Thus, I find no indication that the claimant has met, or equaled, Listing 1.04

[Filing No. 15-2, at ECF p. 24.]

Plaintiff argues that the ALJ's opinion contradicts the record and "jumbles" different requirements of listed impairments under Listing 1.04. [Filing No. 19, at ECF p. 14.] Plaintiff

5

raised Listing 1.04(A) at the hearing. This specific listed impairment requires a disorder of the spine, for instance degenerative disc disease, with the following elements:

1. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain;
2. Limitation of motion of the spine;
3. Motor loss, such as atrophy with associated muscle weakness or muscle weakness by itself, accompanied by sensory or reflex loss; and
4. A positive straight-leg-raising test in the sitting and supine positions if there is involvement of the lower back.

The requirement to ambulate effectively, though raised in the ALJ's decision, is part of 1.04(C). The use of "or" between subsections (A), (B), and (C) means that fulfilling all of the elements of one of these subsections meets Listing 1.04; it is not necessary to prove all elements of all the subsections. Although the ALJ specifically noted that Plaintiff never lost the ability to ambulate effectively, this is not relevant to an evaluation of Listing 1.04(A).

The ALJ's jumbling of the listing requirements, while troubling, is not the Court's biggest concern. More significant is that a fair reading of the medical record available to the ALJ at the time of the hearing establishes all elements of Listing 1.04(A). First, there is evidence of nerve root compression on imaging. Lumbar spine x-rays on December 10, 2016, showed mild degenerative disc disease with intervertebral disc narrowing at the L2-3, L3-4, and L4-5 interspace levels. [Filing No. 15-4, at ECF p. 148.] A lumbar spine MRI from June 7, 2017, showed several findings reflective of degenerative disc disease, including "some impingement on the exiting nerve root" at L3-4, "mass effect on the left foraminal outlet and the left lateral recess" at L4-5, and "some contact with the exiting left L2 nerve root." [Filing No. 15-5, at ECF p. 37.] The interpretation of the MRI by Dr. Mary Below specifically asks if there were "symptoms referable to compression" of the right L3 and L4 nerve roots or the left L4 and L5 nerve roots, indicating that she read the impingement to reflect likely compression. [Filing No.

6

15-5, at ECF p. 37.]  The ALJ does not discuss these findings, nor does he address Dr. Below's opinion regarding interpretation of those findings.

Moreover, a physical therapy evaluation on June 12, 2017, demonstrated: (1) tenderness to palpation along the L1 to L5 spinous processes and the bilateral paraspinal muscles; (2) significant loss of active range of motion in the right hip and knee, along the right side of the trunk, and with flexion and extension of the trunk, all with pain, as well as moderate loss of range of motion along the left side of the trunk; (3) reduced strength at 3+ out of 5 bilaterally in the hips, knees, and ankles, with diminished sensation on the right at L2-S1 and at L3-S1 and with diminished patella and Achilles reflexes; and (4) positive straight-leg-raising tests bilaterally.  [Filing No. 15-5, at ECF p. 26-27.]

Even though Plaintiff's brief thoroughly discusses all of this medical evidence, the Commissioner argues that Plaintiff fails to identify all of the medical criteria that would show she met or equaled the criteria of any listings.  [Filing No. 22, at ECF p. 18.]  The Commissioner contends that Plaintiff does not explain which listings criteria the findings meet or equal, and thus, identifies no listing-level severity objective medical findings.  The Court disagrees, and in fact finds Plaintiff's characterization of the Commissioner's position as a "somewhat scattershot response" fairly accurate.  [Filing No. 23, at ECF p. 1.]

Contrary to the Commissioner's argument, Plaintiff's opening brief demonstrates that she exhibited each of the criteria required to meet Listing 1.04(a).  [Filing No. 19, at ECF p. 14-15.] Plaintiff's reply brief hammers this home, citing specifically to the record to demonstrate Plaintiff exhibited nerve root compromise at L2; neuroanatomic distribution of pain as demonstrated by tender pain response to palpation across L1 to L5 and the bilateral paraspinous muscles; diminished range of motion associated with the lumbar spine; motor loss by

7

demonstration of reduced strength in the lower extremities on examination; diminished sensation on examination at L2-S1 and L3-S1; reflex loss at the patella and Achilles on examination; and positive straight leg raise testing in four different positions on the same examination. [Filing No. 23, at ECF p. 2-3.] Remand is required so that the ALJ can adequately discuss this evidence and properly explain whether Plaintiff satisfied this listing.

Remand is also required to allow a medical expert to review significant new medical evidence never seen by the state agency medical consultants upon whom the ALJ relied. In concluding Plaintiff did not meet or medically equal Listing 1.04(A), the ALJ relied on the state agency medical consultants, noting that they reviewed the objective medical evidence of record, including x-rays of the back and left hip and routine clinical examinations. [Filing No. 15-2, at ECF p. 34.] However, these consultants did not have access to the June 2017 objective imaging and correlating clinical criteria in making their decisions, because these records were not entered into the record until 2018. The ALJ's reliance on stale medical opinions and his failure to submit complex new objective medical evidence to a medical expert for further review fatally undermines the residual functional capacity determination. The state agency physicians last reviewed Plaintiff's medical records in July of 2017, but Plaintiff's MRI demonstrating listing level etiology was not entered into the record until 2018. [Filing No. 15-5, at ECF p. 4.] In *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) the Seventh Circuit held that an administrative law judge's "uncritical acceptance" of the state agency physician's conclusions was reversible error because "fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence."

As Plaintiff correctly points out, the state agency consultants on reconsideration only had an x-ray showing mild degenerative disc disease. A new MRI showed evidence of nerve root impingement or compression, threshold etiology required for consideration of a listing of presumptive disability, which likely would have resulted in a more restrictive RFC than the medium assessment. The ALJ addressed new evidence since the consultants' review by merely remarking, "Additional evidence was submitted at hearing level. It confirms that the claimant continued in her complaints, but it shows no worsening of her actual physical impairments." [Filing No. 15-2 at ECF p. 34.] This is not an accurate characterization.

Seventh Circuit precedent holds that an ALJ may not make medical determinations, as "there is always a danger when lawyers and judges attempt to interpret medical reports and that peril is laid bare here." *Israel v. Colvin*, 840 F.3d 432 (7th Cir. 2016); citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (noting that administrative law judges are not permitted to "play doctor").

The Commissioner's response to this argument lacks substance. Specifically, the Commissioner argues,

> As we have shown, the ALJ expressly stated that he gave significant weight to the state agency physicians' opinions assessing a range of medium work capacity, and also explained that additional medical evidence submitted after their opinions provided support for those limits. Thus, the state agency physicians' opinions and subsequent medical records provided a substantial basis for limiting Plaintiff's capacity.

[Filing No. 22, at ECF p. 12.] (citation omitted.) The Commissioner's suggestion is that an ALJ can simply interpret for themselves that subsequently submitted medical evidence supports state agency physicians' opinions. The Court rejects this suggestion, finding that to endorse this approach would allow the ALJ to impermissibly play doctor. *Akin v. Berryhill,* 887 F.3d 314, 317-18 (7th Cir. 2018).

9

Similarly, the ALJ committed reversible error by failing to provide a sufficient explanation as to why he favored the assessment of non-examining state agency consultants over the opinion of the psychological consultative examiner. After a mental status examination on November 8, 2016, psychological consultative examiner Dr. Jared Outcalt, opined:

> Claimant presented as able to learn, remember, comprehend simple instructions, but her ability to carry out such instructions was negatively impacted by disrupted concentration and lethargy. Claimant presented as able to make appropriate judgments on complex work-related decisions. Overall, claimant was able to attend to conversation though her responses were consistently soft and often slow. Claimant would not experience difficulty handling routine changes at work but may struggle with faster paced changes. Claimant does not exhibit impairments in routine self-care, though reportedly experiences reduced motivation to engage in leisure, social, and public activity, attributing this to a mix of depressed moods, anxiety, and hypervigilance. Claimant appeared capable of completing most calculations without assistance; general fund of knowledge appeared adequate. Claimant was observed to struggle to interact appropriately with others (i.e., this examiner), presenting as fearful, tense, and guarded.

[Filing No. 15-4, at ECF p. 140-141.] The ALJ found his opinion to be only "moderately persuasive," and in doing so again chose to play doctor, substituting his interpretation of a mental status examination for the examiner's own opinion. The ALJ found the opinions of the state agency psychological consultants to be more persuasive than Dr. Outcalt's opinion even though they did not have the ability to interact with Plaintiff. The ALJ did not explain why he gave greater weight to the non-examining sources.

Dr. Outcalt's opinion is detailed and supported by his examination of Plaintiff. In addition to Plaintiff's appearance and behavior in the interview and her own account of her history, Dr. Outcalt discusses medical evidence he reviewed, including a list of current medications and a problem list including diagnoses. In addition, his observation of Plaintiff during the exam indicated a multitude of clinical findings which support his more restrictive opinion. The ALJ did not explain why the examining psychologist's findings and opinions

10

should be rejected, or why Plaintiff should be able to perform detailed instructions where a recent examination had indicated a disruption in the ability to carry out even simple instructions. The Seventh Circuit has stated that an "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467 (7th Cir. 2003) (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002)).

    The ALJ did not cite reasons supported by substantial evidence for rejecting the examining psychologist's opinion. He failed to properly assess an examining medical source's opinion and did not build the requisite "logical and accurate bridge" between evidence and conclusions.  The ALJ also erred in failing to provide any logical explanation for his implicit dismissal of the state agency psychologists' potentially disabling opinions of moderate "check-box" limitations to elements of concentration and social interaction, as well as their additional narrative explanations of those moderate limitations.  The ALJ purports to give "significant weight" to the opinions of state agency consultants Dr. Clark and Dr. Neville.  However, Dr. Clark and Dr. Neville found at both initial and reconsideration levels that there were moderate limitations to completing a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, as well as to interacting appropriately with the general public. Both concluded that Plaintiff "has the ability to understand, remember and carry out detailed but not complex instructions.  The claimant can relate on a superficial and ongoing basis with co-workers and supervisors.  The claimant can attend to tasks for a sufficient period to complete tasks." Filing No. 15-5, at ECF at p. 213-14.]  In contrast, the ALJ's RFC assessment provided for medium work with certain postural limitations and a limitation to "semi-skilled tasks" and

"frequently interacting with coworkers, supervisors, and the public." [Filing No. 15-2, at ECF p. 26.] Despite purporting to grant "significant weight" to state agency psychologists' opinions, the ALJ did not mention their potentially disabling opinions in his decision, let alone offer a good explanation for his departure from those opinions.[3]

The Commissioner also does not contest that the ALJ ignored moderate "checkbox" limitations suggestive of time off task and a narrative social limitation to only "superficial" interactions with co-workers and supervisors, all assessed by the state agency reviewing psychologists he purported to rely upon in formulating the RFC. Such "checkbox" limitations may not simply be ignored even where the ALJ relies upon a narrative assessment made by the same state agency psychologists. *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014). The Commissioner does not substantively respond to Plaintiff's argument that the ALJ failed to provide any "good explanation" for departing from his own agency's psychological consultative examiner, who concluded Plaintiff would have difficulty performing even "simple instructions" and would "struggle to interact appropriately with others." [Filing No. 15-4, at ECF p. 140-41.]

**IV.    Conclusion**

As set forth above, the ALJ's evaluation of Listing 1.04 was fatally flawed. The ALJ should have consulted a medical expert to consider the new, significant and important medical evidence the agency medical consultants never saw. The ALJ also did not adequately explain

---

[3] Admittedly, the ALJ at least provided a social limitation. However, this was only in relation to the amount of time spent interacting with others—frequent interaction. "Frequent" is a term of art used by the Social Security Administration, defined as "occurring from one-third to two-thirds of the time." SSR 83-10. The phrasing of the psychologists' opinions ("relate on a superficial and ongoing basis") indicates limitation to both quantity and quality of interaction as separate factors.

why he favored the assessment of the non-examining state agency consultative examiner over the opinion of the psychological consultative examiner, and committed other errors that require a fresh look. Accordingly, the ALJ's decision is not supported by substantial evidence, and Plaintiff's request for remand [Filing No. 19] is granted pursuant to sentence four of 42 U.S.C. § 405(g).

Date: 7/15/2021

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email